IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

|  |  |
|---|---|
| PAYCARGO, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CARGOSPRINT, LLC and<br>JOSHUA WOLF,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 3:19-cv-85-TCB |

**O R D E R**

This case comes before the Court on Defendants CargoSprint, LLC and Joshua Wolf's motion [62] for summary judgment.[1]

---

[1] Defendants also move [89] to strike portions of Plaintiff PayCargo, LLC's response [81] in opposition to the summary judgment motion. They argue that portions of the response—particularly the response to the statement of undisputed material facts—violate the local rules because they were non-responsive, argumentative, or evasive. Because the Court would reach its conclusion irrespective of the disputed portions of PayCargo's response, the motion [89] to strike is denied as moot.

## I.   Background

This is a case involving the cargo shipping industry and the way cargo is stored, released, and paid for. In the cargo shipping industry, when cargo travels by more than one mode of transportation, the cargo is transferred to a storage facility which stores it until it is retrieved for the next leg of its journey. For the storage facility to release the cargo, the consignee—the person who retrieves the cargo—must pay the facility any accumulated storage charges.

CargoSprint—which was founded in 2012 by its current CEO, Defendant Joshua Wolf—offers a product called SprintPass, which storage facilities use to help coordinate the release of cargo to consignees. When a consignee arrives at a facility that uses SprintPass, he can "check-in" via a kiosk or the SprintPass mobile app. SprintPass then places the consignee in a virtual queue to pick up his cargo and arranges the retrieval of the cargo from the storage facility.

CargoSprint also offers an electronic payment product called SprintPay, which allows consignees to pay the storage facilities for storage and handling fees. In addition to SprintPay, consignees can pay

storage facilities by any other method the facility accepts—including cash, check, ACH transfer, and credit or debit card.

Plaintiff PayCargo, LLC also offers an electronic payment product, eponymously named PayCargo. This product allows consignees to pay storage facilities for storage and handling fees, similar to SprintPay. PayCargo does not, itself, offer a product similar to SprintPass.

CargoSprint currently has seven customers that use SprintPass: (1) Mercury Air Cargo, Inc. ("Mercury"); (2) Alliance Ground International ("Alliance"); (3) Qantas Freight ("Qantas"); (4) Maestro International Cargo ("Maestro"); (5) Air General, Inc. ("Air General"); (6) Total Airport Services LLC ("TAS"); and (7) Faro Cargo Handling Solutions ("Faro"). These are the only seven companies that have ever used SprintPass.

Of the seven companies that use SprintPass, six—all but Mercury—also accept payment through PayCargo, regardless of whether SprintPass is used in a transaction. Mercury has never accepted PayCargo.

On July 19, 2019, PayCargo filed this suit, alleging that Defendants have violated 15 U.S.C. §§ 1 and 2, the Sherman Antitrust Act, by tying the use of SprintPass to SprintPay in a manner that unlawfully restrains trade and attempts to create a monopoly over web-based payments in the shipping and cargo industry.

On September 3, Defendants moved [11] to dismiss PayCargo's complaint, contending that it failed to allege sufficient facts to state a plausible claim for relief. The Court granted [25] the motion to dismiss, essentially finding that PayCargo had made only conclusory allegations regarding the tying arrangement. However, PayCargo was granted leave to file an amended complaint.

On December 9, PayCargo filed its first amended complaint [28]. The complaint contains a single count alleging that Defendants violated § 1 of the Sherman Antitrust Act by tying a consumer's use of SprintPay in the cargo payment services market to its purchase of SprintPass in the dock delivery scheduling market in a manner that unlawfully restrains trade.

On January 13, 2020, Defendants moved [30] to dismiss the amended complaint, arguing it suffered from the same deficiencies as the original. The Court denied [36] the motion to dismiss, holding that PayCargo "plausibly alleged (1) the contours of the tying product market, (2) CargoSprint's significant share of market power, and (3) the involvement of a not insubstantial amount of interstate commerce in the tied product market." [36] at 20.

Extensive discovery was conducted, particularly concerning the seven companies that use SprintPass and their contractual arrangements with Defendants.

On April 26, 2021, Defendants filed their motion [62] for summary judgment. The Court then extended [73] PayCargo's response deadline and granted an additional ninety-day limited discovery period. The motion is now fully ripe for the Court's ruling.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as

to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex Corp.*, 477 U.S. at 331). The second is to show that "there is an absence of evidence

to support the nonmoving party's case." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 324).

### III. Discussion

"A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5–6 (1958)). "Such an arrangement violates § 1 of the Sherman Act if the seller has 'appreciable economic power' in

the tying product market and if the arrangement affects a substantial volume of commerce in the tied market." *Id.* at 462 (quoting *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 503 (1969)). "[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." *Ill. Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006).

"Any alleged antitrust violation may be analyzed under either a *per se* rule or a rule of reason." *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1574 (11th Cir. 1991). The Eleventh Circuit has held that "unless the alleged anti-competitive behavior falls within a few narrow classes, the behavior should be analyzed under the rule of reason." *Id.* It has also held that "unless the plaintiff is able to show all the elements of a *per se* tying claim, the claim must be analyzed under the rule of reason." *Id.* (citing *Tic-X-Press, Inc. v. Omni Promotions Co. of Ga.*, 815 F.2d 1407, 1414 (11th Cir. 1987)).

> The four elements of a per se tying claim are:
>
> 1) that there are two separate products, a "tying" product and a "tied" product; 2) that those products are in fact "tied" together—that is, the buyer was forced to buy the tied product to get the tying product; 3) that the seller possesses

sufficient economic power in the tying product market to coerce buyer acceptance of the tied product; and 4) involvement of a "not insubstantial" amount of interstate commerce in the market of the tied product.

*Id.* (quoting *Tic-X-Press*, 815 F.2d at 1414).

As Defendants suggest, deciding this motion "concerns only the second element: the existence of a tie involving SprintPass and SprintPay."[2] [62-1] at 15.

"Only after the existence of a tie is shown is it necessary to determine whether an illegal tying arrangement exists." *T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.*, 931 F.2d 816, 822 (11th Cir. 1991). In other words, the Court must first determine whether a tie exists between SprintPay and SprintPass.

PayCargo alleges that Defendants unlawfully tied the use of SprintPay (the tied product) to the use of SprintPass (the tying product). Specifically, it alleges that Defendants required their customers to accept electronic payment exclusively through

---

[2] While Defendants do not concede that the per se rule is appropriate, the second factor is identical under either the per se rule or the rule of reason and the Court need not determine which test applies.

9

SprintPay—to the exclusion of PayCargo and other types of electronic payment—in order to use SprintPass.

"[F]or a tie to exist a seller must withhold product A unless the buyer also selects product B." *Id.* "A tying claim requires evidence that the seller refuses to sell the tying product unless the buyer purchases the tied product: 'Where there is no tie, there is no claim.'" *Servicetrends, Inc. v. Siemens Med. Sys., Inc.*, 870 F. Supp. 1042, 1060 (N.D. Ga. 1994) (quoting *T. Harris*, 931 F.2d at 821).

The record in this case conclusively shows that no tying agreement exists between CargoSprint and its SprintPass customers. Thus, PayCargo cannot satisfy the second element of a § 1 claim, and summary judgment will be granted in favor of Defendants.

Defendants submitted declarations from four CargoSprint customers that were allegedly subject to these tying agreements, and each indicate that they chose to accept SprintPay independently of their use of SprintPass. Each indicated that CargoSprint does not require the

companies to accept SprintPay exclusively or at all. *See* [62-5, 62-6, 62-7].[3]

Moreover, of the seven companies that use SprintPass, six accept payment via PayCargo. This, of course, is in addition to standard payment methods like cash, check, or credit card.

The fact that CargoSprint customers accept PayCargo—a competitor and substantially similar product—in addition to SprintPay entirely belies the argument that the use of SprintPass is tied to the exclusive acceptance of SprintPay.

Where "the record is clear that [the alleged violator] does not refuse to sell [the tying product] to [customers] even though [the customers do] not purchase [the tied] service," a § 1 claim cannot be maintained. *Servicetrends*, 807 F. Supp. at 1060; *see also T. Harris*, 921 F.2d at 823 (finding that, where plaintiff did not present evidence that

---

[3] PayCargo alleges that the declarations of the SprintPass customers are "self-serving" and therefore lack credibility. [81] at 21. "But if pure speculation by a competitor were enough to prove the opposite of what consumers describe is happening in the market, then antitrust defendants should surrender every time a rival files a complaint." *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 685 (4th Cir. 2016). The Court finds persuasive the four independent and unrefuted declarations from SprintPass customers indicating that no tying arrangement existed, and that no coercion was applied.

defendant "withheld or threatened to withhold electronic medical equipment unless its customers selected [defendant's] electrocardiographic recording paper," judgment for the defendant was appropriate because plaintiff "presented no evidence that a tie exists").

The Court thus finds that—as to the six SprintPass customers that also accept PayCargo—no tying agreement exists.

The only SprintPass user that does not accept PayCargo is Mercury. It began using SprintPass and SprintPay in 2018 and has never accepted PayCargo. In fact, before 2018, Mercury did not accept payment from *any* electronic payment platform—it accepted only cash, checks, and in-person card payments.

After a "competitive process" in 2018, Mercury selected CargoSprint as its sole electronic payment provider. Mercury's Chief Information Officer Robert Lovejoy testifies that Mercury, for "its own independent business reasons," decided to allow only one electronic payment provider. [62-4] ¶ 9. Lovejoy also testifies that CargoSprint has never required Mercury to "(i) use CargoSprint's SprintPay service (exclusively or at all); (ii) require consignees at its facilities to use

12

SprintPay (exclusively or at all); (iii) not accept payment via PayCargo's payment products; or (ii) [sic] prohibit or prevent consignees from using PayCargo's payment products." *Id.* ¶ 10.

CargoSprint and Mercury have a written contract governing its use of SprintPass. The contract does not require Mercury to accept SprintPay, nor does it prohibit Mercury from accepting PayCargo or any other payment option—electronic or otherwise.[4] In fact, the contract expressly provides Mercury "the right to accept other methods of payment" in addition to SprintPay. *Id.* at 9 ¶ 3(d).

PayCargo alleges that—despite the terms of the contract—CargoSprint and Mercury, by the course of their conduct, have an illegal tying agreement. Specifically, it points to a memorandum sent by Wolf to Lovejoy that stated that Mercury "has agreed to encourage

---

[4] Mercury is not the only facility with a written contract permitting the acceptance of other electronic payment products. Of the seven companies that use SprintPass, CargoSprint has a written contract with three: Mercury, Quantas, and TAS. None of the three contracts requires the use of SprintPay nor prohibits the use of PayCargo or any other payment method. As discussed above, Quantas and TAS accept PayCargo at their facilities. Quantas's business support coordinator also provided a declaration denying any requirement to use SprintPay or not use PayCargo. The written contracts provide further evidence of the absence of a tying agreement between CargoSprint and its SprintPass customers.

customers to pay via CargoSprint as the preferred payment method." [81] at 6. The same memorandum, however, then reads, "This does no way [sic] excludes Mercury Air Cargo for [sic] receiving other forms of payments," reaffirming that CargoSprint was not enforcing a tying agreement. *Id*.

While PayCargo is correct that a tying agreement can be inferred by an extrinsic course of conduct, *Heatransfer Corp. v. Volkswagenwerk, A.G.*, 553 F.2d 964, 977 (5th Cir. 1977), the conduct of Mercury and CargoSprint—specifically, Wolf indicating that Mercury is not prohibited from accepting other electronic payment methods—suggests that no tying agreement exists.

PayCargo's only other proof of a tying agreement between CargoSprint and Mercury is a declaration from PayCargo's own chief operating officer who claims a Mercury official said it would not use PayCargo because CargoSprint required SprintPay to remain the exclusive electronic transaction provider. With no other evidence from which to infer a tying agreement, and with express contractual

14

language and documentary evidence to the contrary, the Court cannot find that a tying agreement existed.[5]

Where, as here, a contract does not require a customer to use the alleged "tied" product, where the alleged violator never instructed its customers to exclusively use the "tied" product, and where several customers testified that they were free to use—and in fact did use—products other than the "tied" product, a tying arrangement does not exist and § 1 claims are due to be dismissed. *See Webb v. Primo's, Inc.*, 706 F. Supp. 863, 868 (N.D. Ga. 1988) (finding the "evidence insufficient to establish that Defendants required Plaintiffs to buy only [defendant's] products" because of the lack of "evidence of actual exertion of economic muscle against the buyer which actually influences his choice of products in the market." (quoting *Tic-X-Press*, 815 F.2d at

---

[5] PayCargo also argues that there is a tying arrangement between CargoSprint and Mercury because CargoSprint indicated it would stop providing SprintPass at no charge if Mercury used PayCargo or other electronic payment providers. However, "[s]tanding alone, the fact that a customer would end up paying higher prices to purchase the tied products separately does not necessarily create a fact issue on coercion." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 915 (9th Cir. 2008) (citations omitted). As discussed above, the Court does not find that CargoSprint's actions were coercive, nor did they constitute the illegal tying of SprintPass to SprintPay.

415)); *see also It's My Party*, 811 F.3d at 684–85 (finding no tying arrangement existed where "several [customers] specifically denied being forced to [use the alleged tied product] as part of their agreements with [defendant]" to use the alleged tying product).

The Court finds that no tying arrangement existed between CargoSprint and its SprintPass customers. PayCargo has not adequately shown the existence of any agreement—express or implied—between CargoSprint and its customers which requires SprintPass users to use SprintPay—exclusively or otherwise. Accordingly, there is no dispute as to any material fact, and CargoSprint is entitled to judgment as a matter of law.

## IV.  Conclusion

For the foregoing reasons, Defendants CargoSprint, LLC and Joshua Wolf's motion [62] for summary judgment is granted. The Clerk is directed to close this case.

IT IS SO ORDERED this 10th day of December, 2021.

_____
Timothy C. Batten, Sr.
Chief United States District Judge